UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

IN RE:

Kristin M. Lebourdais                                    Case No. 13-50222-wsd
a.k.a. Kristin M. Roehling-Lebourdais,                  Hon. Walter Shapero
                                                         Chapter 7
        Debtor.
_____/

## OPINION OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION

Kristin M. Lebourdais ("Debtor") filed the present Chapter 7 petition on May 20, 2013,
claiming an exemption for funds held in a bank account that are traceable to a lump sum
worker's compensation redemption award ("Award") for a shoulder injury she sustained on or
about September 20, 2011 ("Injury Date") working at a Kohl's department store. Debtor
originally claimed the exemption pursuant to 11 U.S.C. § 522 (d)(10)(c) ("The debtor's right to
receive… a disability, illness, or unemployment benefit") but later superseded it to claim the
exemption pursuant to § 522(d)(11)(E), which provides for an exemption for:

> The debtor's right to receive, or property that is traceable to… a payment in
> compensation of loss of future earnings of the debtor or an individual of whom
> the debtor is or was a dependent, to the extent reasonably necessary for the
> support of the debtor and any dependent of the debtor.

Debtor obtained these funds by voluntarily redeeming a worker's compensation claim,
pursuant to a Redemption Order entered by the appropriate state agency on April 18, 2013
("Settlement Date"). She settled her claim for $30,000, which after deducting the attorney fee
and the administrative agency fee, netted $27,750. Debtor thereafter spent some of the money on
ordinary household expenses and for a vehicle trade-in to obtain a used 2002 Buick Rendezvous
with about 86,000 miles to replace an older vehicle that was in disrepair and had about 160,000

miles. The vehicle is claimed as exempt under a separate provision, to which the Trustee does not object. At the time of filing, there remained $20,000 in a Clarkston State Bank account traceable to the Award, to which the Chapter 7 Trustee objected to the Debtor's claimed exemption.

The Trustee does not dispute that the sums in question are "reasonably necessary for the support of the debtor and any dependent of the debtor." The Trustee appears to have abandoned his original argument that the exemption is wholly invalid because the award may have pertained to benefits other than loss of earnings (such as medical expenses, for example). The Trustee bears the burden of proof by a preponderance. In re Stanley, 494 B.R. 287, 289 (Bankr. E.D. Mich. 2013). An exemption should be liberally construed in favor of the debtor and in light of the purpose for which it was created. Id.

Preliminarily, and as noted on the record of the proceeding, the Court agrees with Debtor that § 522(d)(11)(E) provides a basis for exempting such a worker's compensation award, and that § 522(d)(10)(C), which the Debtor originally claimed, is not her only option. See In re Holstine, 2012 WL 2891220 (E.D. Mich. 2012); In re Sanchez, 362 B.R. 342 (Bankr. W.D. Mich. 2007). The Court adopts the holdings and reasoning of those cases with respect to that issue. The remaining issue is whether the award, or any portion thereof, satisfies the requirements of the § 522(d)(11)(E) exemption. After holding an evidentiary hearing, the Court requested supplemental briefs on two additional questions: (1) whether the word "future" in § 522(d)(11)(E) is limited to earnings following the Settlement Date, or whether it might also include the "accrued benefits," which pertain to the lost earnings between the Injury Date and the Settlement Date; and (2) a specific calculation of what portion of the award each party claims is exemptible.

The Trustee first argues the total award constitutes or involves two separate parts: (1) the "accrued benefits," as previously defined; and (2) the "future benefits" that carry forward from the Settlement Date. Peter Verros, who was the Debtor's worker's compensation attorney, agreed that the award included both, but indicated that the math behind such a negotiated settlement is based on numerous factors and convoluted calculations. He testified that the amount of a settlement award was essentially a cost-benefit analysis, taking into consideration the employee's likelihood of success if the claim went to trial, as well as the employee's imminent need for compensation. Mr. Verros' testimony repeatedly indicated that the composition of the Award is not specifically separable into distinct categories and that to attempt to make such a distinction would amount to "guessing." He described the Award as "vague but all-encompassing." The transcript of the worker's compensation hearing failed to shed any additional light on the issue. That hearing was fairly short, non-adversarial, and primarily geared toward certifying that the settlement was procedurally and substantively appropriate.

The Trustee's primary argument is that "future," as used in § 522(d)(11)(E), encompasses and contemplates a period "after the filing of the bankruptcy petition" and that any "accrued benefits" do not qualify for the exemption. In other words, "future" should be viewed from the perspective of the filing date, not the Injury Date or Settlement Date. The Trustee relies on <u>In re Jackson</u>, 593 F.3d 171 (2d. Cir 2010), in which that court held that a wrongful termination award was only partially exempt, opining:

> we conclude that the bankruptcy and district courts properly interpreted "future" in § 522(d)(11)(E) as looking forward from the date of the bankruptcy filing, not from some prior point in time, and hence correctly interpreted "loss of future earnings" in that section as referring to lost earnings for post-petition periods and not for periods prior to the filing of the bankruptcy petition.

Id. at 177. That court affirmed the bankruptcy court's method of pro-rating the award to discern what portion thereof was specific to the post-petition period and allowing the exemption for only that portion. See also In re Horton, 2011 WL 832946 *4 (Bankr. E.D. Ky. 2011) (citing Jackson with approval).

The Trustee's arithmetic can be summarized as follows. Based on Mr. Verros' testimony that future benefits were calculated on the basis of $190 per week, the Trustee infers approximately $10,000 of the $30,000 total award is attributable to non-exemptible accrued benefits, with the remaining $20,000 relating to the period after the Settlement Date. Of that $20,000, the Trustee pro-rates the portion thereof that arose between the Settlement Date and the filing of the bankruptcy petition, calculating that to be $877.76, which the Trustee contends is also non-exemptible. Adding those two non-exemptible portions yields the sum of $10,877.76. Finally, because the Debtor already spent $7,775 of the settlement funds pre-petition, that amount should be subtracted from the $10,877.76, leaving $3,102.76, which the Trustee argues is not a "future" benefit and is non-exemptible.

The Debtor's position is that the entire award is for loss of future earnings and is fully exemptible, regardless of any alleged distinction between the pre-petition and post-petition periods. First, she argues that the "Social Security Administration Information" section on the Redemption Order indicates that the whole award is prospective from the Settlement Date (i.e. the Redemption Order itself indicates that the net award translates to a payment of benefits to Debtor of $60.64 per month for the remainder of her expected lifetime *from the Settlement Date*). However, the Court does not believe this is determinative or materially weighs on the outcome. That language in the Redemption Order appears to be a boilerplate accounting for the purpose of allowing the Social Security Administration to potentially offset Social Security benefits as a

result of the Debtor having received a worker's compensation award. See Lofty v. Richardson, 440 F.2d 1144, 1146 (6th Cir. 1971).

Second, the Debtor argues that Jackson is not dispositive on this issue because of the decision by the Sixth Circuit Court of Appeals in In re Lewis, 387 Fed. Appx. 530 (2010), which was issued shortly after Jackson but without referring to it. In Lewis, the debtor's interest in a United Auto Workers buyout agreement was deemed wholly exempt under § 522(d)(11)(E) because it related to a voluntary waiver of future benefits. Upon filing the bankruptcy petition, that debtor had already received sizeable monetary benefits, but also received more benefits post-petition. The issue specifically litigated there, however, was whether § 522(d)(11)(E) required that the loss of earning capacity must result from bodily injury. The court held that such was not a requirement and upheld the debtor's exemption. It is to be inferred that the distinction between post-petition and pre-petition benefits was not raised because the debtor's exemptions included a "100% exemption" in the buyout plan pursuant to various provisions, including § 522(d)(11)(E). 406 B.R. 518, 521 (District Court proceedings below). As the relevant issue here was apparently not raised or discussed in Lewis, the Court does not find it to be dispositive of or helpful in the present case.

The definition of "future" in § 522(d)(11)(E) and the distinction between pre-petition benefits and post-petition benefits is not the subject of many judicial opinions and is not particularly clear. See In re Jackson, 394 B.R. 8, 11 (D. Conn. 2008) aff'd, 593 F.3d 171 (2d Cir. 2010) ("The parties do not identify and the court has found no case law that directly determines the relationship between pre- and post-petition loss of earnings under section 522(d)(11)(E)"); In re Scotti, 245 B.R. 17 (Bankr. D. N.J. 2000) (court refused to infer that any portion of malpractice award was for compensation for loss of past earnings, although bankruptcy filing

was nearly five years after date of injury); Uriel Rabinovitz, Toward Effective Implementation of 11 U.S.C. § 522(d)(11)(e): Invigorating A Powerful Bankruptcy Exemption, 78 Fordham L. Rev. 1521, 1547-49 (2009) ("These cases demonstrate that the inconclusiveness of the term 'future' in the statute has engendered contradictory rulings with regard to compensation that retroactively covered, at least partly, the prepetition period."). Jackson is squarely on point and explicitly deals with the issue, however, this Court respectfully disagrees with its reasoning and its conclusion.

There are a number of possible worker's compensation scenarios that play into the § 522(d)(11)(E) exemption. In Scenario 1: (a) the precipitating injury occurred pre-petition; (b) worker's compensation proceedings commenced pre-petition, resulting in a lump sum award and including loss of future earnings, which was paid pre-petition to the employee; (c) the ascertainable period covered by the loss of future earnings portion in the award ended pre-petition; and (d) as of the date of the filing of the bankruptcy petition, the debtor still possessed funds traceable to the worker's compensation award. Scenario 2 is the same as Scenario 1, except that the ascertainable loss of earnings portion in the award straddles the bankruptcy filing date (which is the situation in this case). Scenario 3 is the same as Scenario 1, except that the ascertainable loss of earnings portion in the award commenced after the bankruptcy filing date. Scenario 4: (a) the precipitating event occurred pre-petition; (b) as of the bankruptcy petition date, worker's compensation proceedings had either not yet been commenced or, if previously commenced, had not yet been completed; (c) sometime post-petition, the worker's compensation proceedings were completed and an award issued to the debtor including sums for lost wages dating from the pre-petition precipitating event and extending post-petition. Scenario 5 is the same as Scenario 4, except that the award for lost wages covered a period dating from some date after the filing of the bankruptcy petition and not the pre-petition date of the precipitating event.

Initially, one could say with some authority that in every scenario, as of the time of the bankruptcy filing, there existed some property or some legal right that was part of the estate under § 541, given that the precipitating event occurred pre-petition. This is true regardless of whether or not that legal right had been pursued pre-petition or had yet resulted in a final award. Section 522(d)(11)(E), as noted, permits exemption of a "right to receive, or property that is traceable to… a payment in compensation of loss of future earnings of the debtor." In this Court's view, the emphasis ought to be on the "right" (i.e. the right to seek worker's compensation for the precipitating event under appropriate state procedures) and what is, or was, its originating substance. In this Court's view, the "loss of future earnings" language in the exemption provision is better read as expressive of an intent to differentiate and exclude portions of an award that may pertain to compensation for losses not related to earnings, such as out-of-pocket medical expenses or vocational rehabilitation.

Construed that way, the proper inquiry is, and should be, limited to what portion of the award itself can be properly interpreted as having been for loss of future earnings, regardless of when the award was issued or the periods it covered. This interpretation avoids the potentially varying and unjustified results arising from those various scenarios that would involve pro-rata calculations. It would not seem to be a reasonable interpretation of the statute if a debtor's right to claim this exemption, and the extent to which it applied, turned on when the bankruptcy petition was filed in relation to the state law worker's compensation proceedings. Such proceedings and the negotiations incident thereto (a) can sometimes be lengthy and unpredictable; (b) may not be concluded within a predictable timeframe; (c) are not entirely controlled by the employee; and (d) may be less important or less time-sensitive than the employee's other considerations, such as an imminent foreclosure, that may impel him or her to

file bankruptcy at a particular time. Also, the statutory language "property that is traceable to" supports this Court's conclusion. It is an expansive phrase that does not lend itself to <u>Jackson</u>'s interpretation of the statute and, indeed, was not discussed in any length by that court. As a concept, traceability is not limited to a point in time, but rather connotes a chain of causation and/or a relationship;, the point being that the pre-petition portion and post-petition portions of an award's compensation for loss of future earnings are both clearly and equally "traceable" to the precipitating event and the issuance of the award.

This Court's interpretation is also supported by the policy behind exemptions. "The purpose of personal exemptions in bankruptcy is to ensure that the individual does not emerge from bankruptcy destitute, and to ensure that the individual has the basic necessities to enable him to have the 'fresh start' that is the goal of bankruptcy." <u>In re Olson</u>, 424 B.R. 770, 773-74 (Bankr. E.D. Mich. 2010). "Exemptions are essential to the fresh start provided to the honest, but unfortunate debtor. They are not intended 'to provide a windfall to the debtor, however, but rather, to protect the public from the burdens of supporting a destitute family.'" <u>In re Lebovitz</u>, 344 B.R. 556, 561 (Bankr. W.D. Tenn. 2006) (quoting <u>In re Hill</u>, 163 B.R. 598, 601 (Bankr. N.D. Fla. 1994)).

This is a Chapter 7 case with no other assets. The Debtor's limited monthly income is comprised of the following: minimal self-employment as an office assistant ($4,248 for the year 2012 and $825 during 2013 as of the May 20, 2013 filing date), $989.12 domestic support payments, $354 food assistance, and $330 contribution from her hearing-impaired fifteen year old son. These facts are distinguishable from those in <u>Jackson</u>, in which the joint debtors appeared to have been highly educated medical professionals, were employed without any disability, reported assets of $556,113, had a combined monthly income of $10,332, and were

living in a $435,000.00 house. 593 F.3d at 173-74. Those facts appear to have been at least part of the basis for that court's conclusion that allowing those debtors to exempt their full $83,203 award would lead to an absurd result and give them a windfall. Id. at 178. Here, such would not result from allowing this Debtor to retain the $3,102.76 at issue. In any event, if a situation were presented where a debtor would indeed reap a sizeable windfall at the expense of creditors, the bankruptcy court, to some extent, would still be able to negate such an inequity through the "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor" provision.

Furthermore, the Trustee's position would encourage debtors to spend their entire award prior to filing bankruptcy in order to avoid turnover. This would penalize a debtor who has been financially responsible and saved a portion of an award for ongoing necessary expenses. That would be bad policy. After all, the Debtor likely settled the worker's compensation claim for the indicated sum because, after weighing the variables and risks, she determined such was the most favorable outcome to compensate her and allow her to attempt to recover from her injury and her financial difficulties.

Interestingly (though not decisive), even if the Court were to agree with Jackson, such might not alter the outcome in this case. First, the Debtor contends she has enough § 522(d)(5) exemption allowance to easily cover the $3,120.76 the Trustee argues is non-exemptible, thus allowing her to amend her exemptions and prevent the Trustee from prevailing in any event. Second, the Court is skeptical as to the basis of the Trustee's method of apportioning and calculating the accrued benefits and future benefits, particularly in light of Mr. Verros' testimony that such are not easily delineated and that the total award itself is a fluid, non-specific amalgamation of the two. The Trustee's calculation of the dollar amount that is non-exemptible

has materially evolved throughout the course of these proceedings. In a way, that makes it speculative as to what portion is non-exemptible, which would support the conclusion that the Trustee has not met his burden of proof. In re Meyer, 433 B.R. 739, 744 (Bankr. D. Minn. 2010).

The Court thus concludes that the Trustee's objection to the Debtor's claim of exemption is overruled in in its entirety, and the Court will contemporaneously enter an appropriate order.

Signed on March 19, 2014

/s/ Walter Shapero
Walter Shapero
United States Bankruptcy Judge